UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                             Criminal Case No. 13-20755

Ronni Hermiz,                           Sean F. Cox
                                                           United States District Judge

    Defendant.
_____/

**OPINION & ORDER**

In this action, Defendant is charged with unlawful procurement of citizenship and with making false statements relating to his citizenship. Following Defendant's indictment, the Government filed a motion asking this Court to conduct a hearing to determine if a conflict of interest prevents Defendant's retained counsel from representing him in this action. This Court granted that request and, after proposing a procedure for dealing with the conflict issue that all parties agreed to, held an *in camera* evidentiary hearing on November 26, 2013. As set forth below, having held that hearing, the Court finds that a conflict of interest does not currently exist and that a conflict is not likely to develop during the course of this criminal action.

**BACKGROUND**

This action was initiated by a criminal complaint filed on September 16, 2013, alleging that Defendant Ronni Hermiz ("Defendant" or "Hermiz") made false statements in applying for citizenship or naturalization.

Hermiz was arrested on September 19, 2013. On September 25, 2013, the magistrate judge issued an order appointing counsel for Hermiz and he made his initial appearance. He was

released on Bond.

Hermiz was indicted on October 15, 2013.  He is charged with: "Unlawful Procurement of Citizenship," in violation of 18 U.S.C. §1425(a) (Count One); and "Materially False, Fictitious, or Fraudulent Statements," in violation of 18 U.S.C. § 1001(a)(2).  Both charges stem from Hermiz's alleged failure to disclose that he was arrested on July 13, 2011, in connection with an alleged drug conspiracy.

On October 15, 2013, attorney Michael Kemnitz ("Kemnitz") filed an appearance as retained counsel for Hermiz, along with an acknowledgment of the Indictment.

This Court held a Status Conference in this matter on October 30, 2013.  The night prior to that conference, the Government filed a motion requesting that the Court conduct a hearing to determine if a conflict of interest prevents Kemnitz from representing Hermiz in this action.  The Government contends that Kemnitz has previously represented Ahmad Abboud in a criminal case before Judge Cohn, and that his prior representation of Abboud may pose a conflict of interest against his current client (Hermiz) who may wish to cooperate in this matter by providing information regarding Abboud's alleged drug activities.

The parties then discussed the issue at the Status Conference, at which time the Government asked the Court to review, at a sidebar, a report drafted by Border Patrol Agent David Thompson. At that hearing, Defense Counsel indicated that he believes the Government is attempting to create a conflict where none exists.  Following the Status Conference, this Court issued an Order on October 31, 2013 (Docket Entry No. 15), that set: 1) a motion cutoff of November 22, 2013; 2) a Status Conference for November 22, 2013; 3) a conflict hearing for November 26, 2013; and 4) a trial date of December 10, 2013.

This Court later struck the Government's motion and, during a conference call with counsel held on October 30, 2013, directed the Government to file its motion under seal. The Government then filed a motion under seal asking the Court to inquire into a potential conflict. It also filed a motion asking the Court to allow the Government to file the report of Agent Thompson under seal, for an *in camera* review by the Court. That request was granted. During that telephone conference, Kemnitz advised the Court that he had determined that he had previously represented Ahmad Abboud's brother, Hassan Abboud, in a matter in which he appeared as a witness.

The Court held another Status Conference on October 31, 2013. At that conference, the Court discussed the motion with Counsel for the Government and Kemnitz. Kemnitz stated that he does not believe a conflict exists, although he has not seen the report by Thompson. He again expressed concern that the Government may be attempting to create a conflict were one does not actually exist.

The Court proposed that it determine if a conflict exists by a procedure under which: 1) the Court would appoint independent counsel for Hermiz, attorney Richard Helfrick ("Helfrick") who would represent him at an *in camera* (closed) hearing before the Court; 2) Agent Thompson, Agent Michael Awe, and Agent Eric Anderson would appear before the Court and be questioned by the Court and cross-examined by Hermiz's appointed Counsel; and 3) Hermiz would also be examined by the Court and his appointed Counsel. Neither the Government nor Hermiz's retained counsel would be present for the hearing.

Although both the Government and Kemnitz were receptive to that procedure during the October 31, 2013 conference, the Court allowed them additional time to consider the procedure

before agreeing to it. This Court adjourned the conference until November 5, 2013. On November 5, 2013, the Government and Kemnitz agreed to the proposed procedure on the record. In addition, Hermiz agree to the procedure on the record.

The Conflict Hearing was scheduled for November 26, 2013. The Court instructed that, prior to the hearing, Mr. Helfrick, Hermiz's appointed counsel for the Conflict Hearing, be provided with: 1) Agent Thompson's sealed report; and 2) the transcript of the hearing wherein the parties agreed to the procedure for the Conflict Hearing.

The Court held the *in camera* evidentiary hearing on November 26, 2013. Helfrick represented Hermiz at that hearing. The Court examined the following witnesses, who were also cross-examined by Helfrick: 1) U.S. Border Patrol Agent David Thompson ("Thompson"); 2) U.S. Border Patrol Agent Michael Awe ("Awe"); 3) U.S. Border Patrol Agent Eric Anderson ("Anderson"); and 4) Hermiz.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing on November 26, 2013, and the other evidence presented during the Course of this action, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In the 1990's, Kemnitz represented Hassan Abboud in two matters. (*See* Docket Entry

No. 19). First, Kemnitz represented Hassan Abboud with respect to a case in this Court, Case No. 97-80625, wherein Hassan Abboud was involved as a witness. Hermiz was not a party to that action.

Second, in 1999, Kemitz represented Hassan Abboud in a forfeiture action in Macomb County Circuit Court, wherein Hassan Abboud was a claimant. Hermiz was not a party to that action.

In 2007, Kemnitz represented Ahmad Abboud in two criminal actions. First, Kemnitz represented Ahmad Abboud with respect to a disorderly conduct charge in 50th District Court in Pontiac, Michigan. Hermiz was not a party to that action.

Second, Kemnitz represented Ahmad Abboud in a criminal case in this Court, Case No. 07-20393, wherein Ahmad Abboud was charged with distribution of marijuana and money laundering. Hermiz was not a party to that action.

Kemnitz is not currently representing either Ahmad Abboud or Hassan Abboud in any pending civil or criminal matters.

This action against Hermiz was initiated by a criminal complaint filed on September 16, 2013, alleging that Hermiz made false statements in applying for citizenship or naturalization. There are no drug charges in this action and there are no other Defendants in this action.

Hermiz is thirty-three years old. Hermiz came to the United States when he was three years old. Hermiz successfully completed the Sixth Grade in the United States. He continued in school beyond the Sixth Grade but ultimately left school because he was not doing well. Hermiz speaks and understands the English language well but has some reading limitations.

Hermiz lives with his brother, Ron Hermiz, in Sterling Heights, Michigan. Ron Hermiz

owns and operates a beer and wine store in Detroit, Michigan and Hermiz works there.

In July of 2011, Hermiz was charged in a criminal action in state court, following a marijuana seizure. Kemnitz represented Hermiz in that criminal action. That action was ultimately dismissed.

On September 18, 2013, Agent Thompson had a brief conversation with Hermiz, during which Thompson gave Hermiz a copy of his arrest warrant and the criminal complaint in this action. During that conversation, Hermiz did not state that he wished to cooperate with the Government in this action. Agent Thompson asked Hermiz, rather generically, if he was "interested in helping yourself out by speaking to the government," to which Hermiz responded, "of course." Hermiz then asked Agent Thompson "what's in it for me" if he were to agree to speak to the government. Agent Thompson responded that he could not promise Hermiz anything, and Hermiz would have to speak to the United States Attorney to discuss that. Hermiz then told Thompson that while he would like to "get out of this case," he had no information to offer.

On September 25, 2013, attorney Richard Helfrick of the Federal Defenders Office was appointed to represent Hermiz in this action. Hermiz did not request or have any meetings or debriefings with the government while he was represented by Helfrick.

Hermiz then hired Kemnitz to represent him in this matter. Hermiz paid Kemnitz a $5,000.00 retainer, and borrowed the money for that payment from his brother, Ron Hermiz. Kemnitz agreed to make a payment plan with Hermiz for any fees incurred beyond the retainer. Kemnitz filed an appearance in this case on October 15, 2013.

On October 22, 2013, Agent Thompson and Agent Anderson went to speak with Ahmad

Abboud.  Agent Thompson told him he that wished to discuss events concerning Hermiz.  Ahmad Abboud told the agents he did not wish to answer any questions without having an attorney present.  He stated that he believes he would be represented by Kemnitz, if he had to hire an attorney.

Hermiz has not had, or requested, any meetings or debriefings with the government since Kemnitz was retained.

Hermiz testified that he did not tell any agents that he wished to cooperate with the government in this case.  Hermiz testified that he wants Kemnitz, his chosen counsel, to represent him in this action.  He further testified that he would not have a problem if Kemnitz also worked for the Abbouds in the future.  The Court fully credits Hermiz's testimony.

## ANALYSIS & CONCLUSIONS OF LAW

"The Sixth Amendment guarantees counsel for all defendants in criminal prosecutions and recognizes a qualified right to choose counsel."  *United States v. Stafford*, 512 F.3d 833, 839 (6th Cir. 2008).  "A defendant enjoys a presumption in favor of counsel of choice, but such a presumption may be overcome because such a choice must be balanced with 'the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice.'"  *Id*. (quoting *United States v. Mays*, 69 F.3d 115, 121 (6th Cir. 1995)).  The Sixth Circuit has explained:

> In situations where a potential conflict of interest may arise, the court's interest in the integrity of the proceedings may trump the defendant's choice.  Whether the client waives his right to conflict-free representation is not dispositive, as district courts have the ability to prevent a conflict "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  *Wheat,* 486 U.S. at 163, 108 S.Ct. 1692.

*Stafford*, 512 F.3d at 839.  Thus, a district court must carefully balance the "defendant's right to counsel of choice with the court's independent obligation to serve justice."  *Id.*

A district court "has 'wide latitude' when it makes attorney-disqualification decisions," and its ruling will be upheld unless it is arbitrary or without adequate reasons.  *United States v. McCoy*, 480 Fed. App'x. 366, 369-70 (6th Cir. 2012).  "Such discretion is warranted, moreover, because of the 'whipsaw' nature of waiver of conflict-free representation: 'If a trial court disqualifies counsel, defendant will argue . . . a violation of his Sixth Amendment right to counsel of his choice. If a trial court refuses to disqualify an attorney, a defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest, asserting that his waiver was not knowingly or voluntarily made.'"  *Stafford*, 512 F.3d at 840.

If the Court finds that a conflict or a strong likelihood of a conflict exists, the Court should then determine whether the defendant wishes to waive the conflict.  "Although a defendant in a criminal case has a right to be represented by counsel free of any conflicts of interest, this is a right which can be waived."  *Phillips*, 699 F.2d at 803; *see also United States v. Reese*, 699 F.2d 803, 804 (6th Cir. 1983)("[E]ven if an actual conflict of interests or a strong likelihood of conflict is demonstrated the defendant must be given an opportunity to waive his constitutional right to conflict-free representation.  A voluntary waiver of this constitutional right, knowingly and intelligently made, must be honored by the court in the absence of compelling circumstances.").  "The waiver must be voluntary, and must be knowingly and intelligently made to be effective.  Thus, a second sensitive inquiry must be made after a district court concludes that a conflict exists or is likely to develop."  *Phillips*, 699 F.2d at 803.

Thus, the case law reflects that this Court should first determine the threshold issue of

whether an actual conflict exists or is likely to develop during the course of this case.

In its Motion asking the Court to inquire into potential conflict of interest issues, the Government asserted that because Kemnitz has previously represented Ahmad Abboud and/or Hassan Abboud, his representation of Hermiz in this matter may pose a conflict of interest because Hermiz may wish to cooperate with the government and offer information regarding the Abbouds.

In *United States v. Phillips*, 699 F.2d 798 (6th Cir. 1983), the Government made a similar argument:

> [The government] filed a motion to disqualify Phillips' counsel on the ground of conflict of interest. In its motion the government asserted that Phillips had advised government agents at the time of his arrest that his supplier of cocaine was George Moraites and that Moraites had retained his attorney, Robert Gittleman, to represent Phillips. In addition, the motion stated that Phillips expressed a desire to cooperate with the government agents, but had said he did not want attorney Gittleman to be aware of his cooperation because this would compromise Phillips with Moraites.

*Phillips*, 699 F.2d at 799. The district court held an evidentiary hearing to determine if a conflict existed. It does not appear that the Court appointed independent counsel for the defendant. In any event, the Court heard testimony from the agents, who testified consistent with the government's position, that the defendant had stated he wished to cooperate but he did not want his retained counsel to know that he was cooperating, for fear of his life. The defendant testified and presented several other witnesses. The defendant denied saying Moraites was his supplier, denied ever saying that he did not want his retained counsel to represent him, and stated that he had paid his retained counsel with his own money. The district court credited the testimony of the agents over the testimony of the defendant and found a possible conflict. That determination was upheld by the Sixth Circuit:

9

> The district court in the present case undertook a cautious and sensitive balancing of interests and found a "possible prejudicial conflict" if Mr. Gittleman were permitted to continue representing Phillips. The district court's findings that the testimony of the DEA agents was credible and that Mr. Gittleman was the attorney of George Moraites in some matters were not clearly erroneous. Accepting the testimony of the DEA agents as true, the district court could find that Phillips had named Moraites as his supplier of drugs, had stated that Gittleman was representing him at the behest of Moraites and that Phillips feared for his safety if Moraites should learn through Gittleman that he was cooperating with the DEA. Given these findings the conclusion was justified that a conflict of interests would likely exist between Phillips and his attorney.

*Phillips*, 699 F.2d at 802-03.

As Hermiz's appointed counsel noted at the conflict hearing, this case can be distinguished from *Phillips* in several key respects. Notably, unlike the situation presented in *Phillips*, Kemnitz previously – and successfully – represented Hermiz in another criminal action. Thus, Hermiz has an existing relationship with his chosen retained counsel. In addition, contrary to *Phillips*, this Court finds that Hermiz, not Ahmad Abboud or Hassan Abboud, hired and retained Kemnitz.

In *Phillips*, the defendant was indicted on drug charges and the court found that the defendant had named an individual (Moraites) as his supplier of those drugs. This case, however, does not involve any drug charges. Unlike the situation in *Phillips,* Hermiz has not made any statements implicating either Ahmad Abboud or Hassan Abboud *with respect to any criminal activity*, much less criminal activity related to the charges in this case.

And finally, contrary to *Phillips*, this Court finds that Hermiz did not tell the agents that he wished to cooperate with the government but was afraid to do so. To the contrary, while Hermiz indicated that he would like to "get out of this case," he told the agents that he had no information to offer to the government.

The Court finds that a conflict does not currently exist and a conflict is not likely to develop during the course of this case.  Under the facts that exist here, the Court's  interest in the integrity of the proceedings does not trump Hermiz's right to retained counsel of his choice.[1]

## CONCLUSION & ORDER

Having held an evidentiary hearing in this matter, and having carefully balanced Hermiz's right to counsel of choice with the Court's independent obligation to serve justice, the Court concludes that a conflict of interest does not currently exist and that a conflict is not likely to develop during the course of this case.  As such, the Court **RULES** that Hermiz may proceed with his chosen retained counsel.

**IT IS FURTHER ORDERED** that the parties appear for a Status Conference on **December 6, 2013, at 2:30 p.m.,** so that: 1) this Court can issue a new Scheduling Order in this matter; and 2) the Government can provide Hermiz's retained counsel with a copy of its sealed *in camera* exhibit that was submitted to the Court.

**IT IS SO ORDERED.**

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated:  December 3, 2013

---

[1] Hermiz's appointed counsel indicated at the November 26, 2013 hearing that Hermiz wishes to waive any conflict that exists.  However, in light of this Court's determination that a conflict does not exist and that a conflict is not likely to develop during the course of this case, the Court need not proceed further.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                      Criminal Case No. 13-20755

Ronni Hermiz,                  Sean F. Cox
                                            United States District Judge

    Defendant.
_____/

PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record on December 3, 2013, by electronic and/or ordinary mail.

                                    S/Jennifer McCoy
                                    Case Manager